# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

ANTONIO JACKSON                         )

_____                )

Plaintiff                              ) Civil Action 6:25-cv-01306

                                        )

                                        )

             v.                  )

                                        )

OFC. ADAM HOFFMAN;                      )

OFC. AUSTIN MANNING;                    )

OFC. VIRGINIA STEPP;                    )

OFC. EDWIN LUTZ;                        )

SGT. CHRISTOPHER SNEDECKER)

OFC. EVAN JONES                         )

_____        )

Defendant(s)

## <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

COMES NOW, Defendants, ADAM HOFFMAN, AUSTIN MANNING, VIRGINIA STEPP, EDWIN LUTZ, and CHRISTOPHER SNEDECKER, by and through undersigned attorney, hereby moves this Honorable Court to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and Local Rule 3.01 for failure to state a claim upon which relief may be granted, and in support states:

## I.   Statement of Case

Plaintiff filed a Complaint (Doc. 1) against above named Defendants alleging, Count I, Violation of 42 USC 1983 Excessive Force against defendants Hoffman and Manning, Count II, Violation of 42 USC 1983 Battery against defendants Hoffman and Manning, Count III, Violation of 42 USC 1983 Failure to Intervene against defendants Stepp, Hoffman, Manning, Lutz, and Snedecker, Count IV, and Violation of 42 USC 1983 Supervisor Liability against defendant Snedecker.  The Complaint is a mixture of facts and fiction.  As the Plaintiff notes in his Complaint, there is police bodycam footage of the events in question.

The Plaintiff was parked in a parking lot on April 1st, 2024, when approached by Officer Hoffman (Complaint at 7).  Plaintiff alleges the officer did not activate his overhead lights (Id.).  Plaintiff alleges that Officer Hoffman, for no apparent reason, "became extremely verbally aggressive" and threatened to "drag Plaintiff out of the vehicle." (Id.).  Plaintiff alleges that he decided he was in a consensual encounter and drove away from the Officer (Id. at 8).  Plaintiff alleges that Officer Hoffman then pursued him for an unknown distance (Id.).  However, at some point, Melbourne Police Officer Evan Jones allegedly crashed into Plaintiff at sixty miles per hour, disabling Plaintiff's vehicle (Id.).  Plaintiff alleges he exited his vehicle with his hands in the air, following the lawful command of the officers on the scene (Id.).  Plaintiff alleges he was body slammed to the ground, with both officers

punching and kicking him with "maximum excessive force in the face, head, back, ribs and body." This alleged battery occurred for a Herculean period of fifteen to twenty minutes (Id. at 9). The Plaintiff was transported to the hospital, where he alleges that Ofc. Stepp attempted to intimidate medical personnel by ordering them to conduct a strip search of the Plaintiff in her presence instead of tending to his wounds (Id. at 9, 10). Plaintiff further alleges that both Sgt. Snedecker and Ofc. Lutz failed to stop Ofc. Hoffman and Ofc. Manning from physically assaulting Plaintiff and failed to stop Ofc. Stepp from interfering and intimidating hospital personnel.

## II.    Standard of Review

A motion to dismiss must be granted unless a complaint contains sufficient factual matters, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine if a claim is plausible, the Court considers the well-pled factual allegations, documents central to or referenced in the Complaint, and matters judicially noticed. *La. Grasta v. First Union Sec., Inc.*, 358 F. 3d 840, 845 (11th Cir. 2004). The Court accepts all well-plead allegations as true and construes the allegations in the light most favorable to the non-moving party. *Ascroft v. Iqbal* at 679. However, a court need not accept as true conclusory allegations. (Id. at 662). Instead, the Court should: 1. "eliminate any allegations in the complaint that are merely legal conclusions;" 2.

Assume the veracity of any well-pleaded factual allegations; and 3. "determine whether they plausibly give rise to an entitlement to relief." *ADA v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010).

## III.    INCORPORATION BY REFERENCE

The Court may consider evidence attached to a motion to dismiss without converting it to a motion for summary judgment if: 1. The Plaintiff refers to the contents in the Complaint; 2. The documents are "central to the plaintiff's claim," and; 3. the documents' contents are undisputed. *Baker v. City of Madison*, 67 F.4th 1268 (11th Cir. 2023). When reviewing the video footage in conjunction with a motion to dismiss, the court "must construe all ambiguities in the video footage in favor of the plaintiff." (Id. at 1277). However, "where a video is clear and obviously contradicts the plaintiff's alleged facts, [the court] accept(s) the video's depiction instead of the complaint's account, and view[s] the facts in the light depicted by the video." (Id. at 1277-78) (internal citations omitted).

In his Complaint, the Plaintiff states explicitly, "Plaintiff was continuously punched and brutally kicked for a period of 15-20 minutes, all witnessed by everyone's department issued body cameras, before being placed in the back of officer Stepp's patrol car…" (Complaint at 9). Therefore, the body cameras cover the alleged fifteen to twenty minutes of continual, "brutal," "sadistic," kicking and

hitting the Plaintiff states he endured. The inclusion of attachments therefore should not convert this motion from a motion to dismiss to a motion for summary judgment.

## IV.    QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the Court must determine: 1. whether Plaintiff has alleged facts that "show the [defendant's] conduct violated a Constitutional right;" and 2. "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may decide which prong of the *Saucier* test to apply first based on the facts of the case. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In determining whether force is reasonable, the courts consider whether the officer's actions are objectively reasonable in light of the facts and circumstances surrounding him. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The circumstances the Court should consider include the severity of the crime, whether the subject posed an immediate threat to the officers whether the subject was actively resisting

arrest or attempting to flee to avoid arrest. (*Connor* at 396). The reasonableness of the use of force is judged from the perspective of a reasonable officer on the scene, not based on hindsight (Id.). "Police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 109 S. Ct. at 1872. Consequently, courts "are loath to second-guess the decisions made by police officers in the field." *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003).

Complaint states that the defendants were police officers acting under color of state or local law (Complaint at 5). The officers were acting within their discretionary authority, investigating and arresting the Plaintiff. See *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The burden now shifts to Plaintiff to show that the Defendant Officers are not entitled to qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

## V.    DEFENDANTS HOFFMAN AND MANNING DID NOT UTILIZE EXCESSIVE FORCE (COUNT I)

Plaintiff's allegations of excessive force by Officers Hoffman and Manning are inconsistent with the body camera footage that he acknowledges recorded the arrest. See (Complaint at 9). Plaintiff alleges "he was kicked and punched in the face, head, ribs and body multiple times by Defendants Hoffman and Manning while helplessly

on the ground, handcuffed behind the back." The Plaintiff further alleges that he was tased multiple times, causing him to suffer permanent nerve damage (Id. at 14).

The bodycam footage shows the following details: Officer Hoffman approaches and talks to the Plaintiff in his parked vehicle (00:38 – 4:55). The Plaintiff drives away against the orders of Officer Hoffman and Officer Hoffman Pursues him (4:55 – 8:50). Officer Hoffman arrives on scene at the accident and approaches the crashed vehicles (8:50 – 9:12). The Plaintiff exits his vehicle, tenses his arms or otherwise resists and is escorted to the ground (9:12 – 9:40). The Plaintiff struggles while having his hands placed behind his back, Officer Hoffman places a taser on the Plaintiff's shoulder, removes the taser and discharges it off the Plaintiff as a warning, then places it back on the Plaintiff's shoulder (9:40 – 9:52). The Plaintiff complies and he is handcuffed (9:53 – 10:06). The Officers talks to the Plaintiff while he is on the ground (10:07 – 10:30). The Officers rolls the Plaintiff over and sits him upright, gives him a quick medical inspection, and stands immediately over him while they discuss the situation and while other officers stand around (10:30 – 12:15). During this time, the Plaintiff's head is in view, neither kicks nor punches are being delivered to him. A female officer can later be seen standing over him while he is sitting, unharmed, on the ground (12:21). Officer Hoffman walks away and speaks with other officers and returns to the Plaintiff a few moments later to where the Plaintiff remains sitting and uninjured (14:51). Eventually, within the

alleged fifteen to twenty minutes where the Plaintiff claims he is being savagely beaten, paramedics arrive on scene to examine him (16:20 – 16:45). Officer Hoffman continues to stand by the Plaintiff until he departs to speak to other officers (18:00). The Plaintiff is seen sitting unharmed on the ground multiple times as Officer Hoffman walks around (20:15, 21:33, 22:00). He disappears from the scene after this point, but there is an ambulance parked immediately next to the spot where the Plaintiff was sitting (25:09). The video clearly shows that, contrary to the Plaintiff's allegations, at no time did any officer punch or kick the Plaintiff in the face, head, or ribs, or anywhere else on his person.

Officer Hoffman and Officer Manning used only the force necessary to place the Plaintiff into handcuffs and nothing more. The right to make an arrest necessarily carries with it the right to use some degree of physical force effect it. _Graham v. Connor_, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). The amount of force used in making an arrest is evaluated under the Fourth Amendment's objective reasonableness standard. _Hadley v. Gutierrez_, 526 F.3d 1324, 1329 (11th Cir. 2008). See, for example, _Mobley v. Palm Beach Cnty. Sheriff Dep't._, 783. F. 3d 1347 (11th Cir. 2015). In that case, the court stated "the typical arrest involves some force and injury. When more force is required to effect an arrest without endangering officer safety, the suspect will likely suffer more severe injury, but that alone does not make the use of that amount of force unreasonable" (Id. at 1355).

The court offered five factors that they "consider from the perspective of a reasonable officer on the scene – severity of the crime, whether the suspect poses an immediate threat to safety, whether he is actively resisting or attempting to evade arrest, the need for the application of force, and the relationship between the need and amount of forced used" (Id.)  In the case at bar, Plaintiff ran from an officer, resulting in a vehicle crash, and resisted the officer's attempts to place him in handcuffs.  In order to place him in handcuffs, the Plaintiff was escorted to the ground and the use of a taser was threatened.  The video shows that no further force was used.  As such, no excessive force or battery was used on the Plaintiff. Therefore, this claim is due to be dismissed.

## VI.    DEFENDANTS HOFFMAN AND MANNING DID NOT BATTER PLAINTIFF (COUNT II)

In an attempt to support a §1983 claim, Plaintiff alleges that Defendants Hoffman and Manning "committed Battery upon Plaintiff in violation of Florida Statute 784.03" (Complaint at 13).  To plead a section 1983 complaint, the Plaintiff must allege: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." _Dollar v. Haralson Cty._, 704 F.2d 1540, 1543 (11th Cir. 1983).  A violation of state law may be the basis of a tort claim, but it alone is insufficient to support a section 1983 claim that must be

based upon the deprivation of a federal right. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). Thus, to the extent Plaintiff attempts to allege a claim under section 1983, for a claim not based on constitutional or federal law, the claim fails as a matter of law.

A claim that Defendants Hoffman and Manning battered the Plaintiff under state law fails as well. The Florida Legislature provided a limited waiver of sovereign immunity in section 768.28 Florida Statutes. Section 768.28(9)(a), Florida Statutes prohibits personal liability for acts that occurred within the course and scope of the officers' employment unless the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Plaintiff does not allege the acts were committed in bad faith or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, and as such, the claim should be against the City and not the officers. Consequently, the claims against Defendants Hoffman and Manning must be dismissed.

Plaintiff alleges that the officers battered him "by punching and kicking Plaintiff multiple times while he was helplessly bound by handcuffs on the ground behind his back" (Id. at 13). The bodycam footage, as discussed in detail immediately above, shows that these allegations are wholly without merit. The video depicts the Plaintiff exiting the crashed vehicle, flexing, stiffening, or otherwise attempting to resist the

officers, being escorted to the ground, a taser being threatened, and the Plaintiff being handcuffed. At no point are there punches or kicks delivered to the Plaintiff. We must look again to *Mobley*, and the amount of force necessary to arrest the suspect. Here, again, as argued above, the officers used the minimum amount of force necessary to bring the Plaintiff into compliance, shortly after he both ran from them and attempted to resist their efforts to restrain him. Therefore, this claim is due to be dismissed.

## VII.   DEFENDANTS STEPP, HOFFMAN, MANNING, LUTZ, AND SNEDECKER DID NOT FAIL TO INTERVENE (COUNT III)

Plaintiff alleges that Defendants Hoffman and Manning failed to stop each other from using excessive force on Plaintiff, that Defendant Stepp failed to stop Defendants Hoffman and Manning from using excessive force, that Defendant Lutz failed to stop Defendant Stepp from interfering and intimidating hospital medical personnel, and that Defendant Snedecker failed to intervene against Defendant Stepp (Id. at 15, 16).

"A police officer is liable under §1983 if he 'fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence.'" *Palato v.* Cook, 2025 U.S. Dist. LEXIS 111911 (M.D. Fla. June 12, 2025)(internal citations omitted). As an initial matter, and discussed extensively above, Plaintiff did not experience any excessive force, as proven by body camera footage.

Therefore, there was no duty for Ofc. Hoffman, Manning, or Stepp to intervene against the other to stop something that was not happening.

Plaintiff alleges that Defendant Lutz and Defendant Snedecker failed to intervene against Defendant Stepp at the hospital for allegedly conducting a strip search. Regarding failure to intervene, "while officers who fail to intervene to protect a victim from another officer's unconstitutional can be held liable under section §1983, such occasions appear to be narrowly limited to those involving the use of excessive force." *Tarantino v. Citrus County Gov't.*, 2014 U.S. Dist. LEXIS 124132, 35 (M.D. Fla. 2014). The Court further explained that the application of liability "within the Eleventh Circuit has been limited to excessive force cases." (Id. at 36) (See also *Palato v. Cook*, 2025 U.S. Dist. LEXIS 111911 (M.D. Fla. 2025).

In *Tarantino*, a female officer "ordered Tarantino to remove all of her clothing in public view while motorists drove by and deputies looked on. Then, after permitting her to get dressed, Canfield ordered her to remove all of her clothing once again, whereupon Canfield forcibly removed a tampon from Tarantino's vagina." (*Tarantino* at 2, 3). The Court stated "thus, at best it appears the law is undecided as to whether a failure to intervene claim is available where excessive force is not involved and the Court therefore cannot say that law enforcement officers commit a Constitutional violation when they fail to prevent another officer's unlawful search." (Id. at 44). Further, "Taking the evidence in the light most favorable to Tarantino,

the incident here was an aggressive search but it did not involve the type of force seen in excessive force cases such as those cited above where failure to intervene can create liability under section 1983 in the Eleventh Circuit." (Id.).  The Court found "Alternatively, to the extent failure to intervene does violate the Constitution in these circumstances, the officers would be protected by qualified immunity because no United States Supreme Court, Eleventh Circuit of Florida Supreme Court authority would have put them on notice that their failure to act would be a constitutional violation."  (Id. at 44, 45).

With *Tarantino* in mind, we return to the case at bar.  Here, Officer Stepp is alleged to have conducted a strip search while the Plaintiff was in the privacy of a hospital, while Sgt. Snedecker and Ofc. Lutz were present.  It is not alleged that she touched him in any way, let alone used excessive force on him.  Plaintiff presents no case law, nor is there any, finding that failure to intervene rises to the level of a §1983 violation when applied to cases other than excessive force.  Therefore, this claim is due to be dismissed.

### VIII.  <u>NO SUPERVISOR LIABILITY FOR DEFENDANT SNEDECKER</u>

Plaintiff alleges that Defendant Snedecker was the ranking officer at the scene and allowed his subordinates to act in an "improper, sick, malicious and sadistic manner," violating Plaintiff's rights (Complaint at 18).  As explained in detail above, as proven by body camera evidence, there was no excessive force used on the

Plaintiff.  There has been no failure to intervene.  And there has been no supervisory liability

A supervisor may be held liable under § 1983 if "reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate." *McKinney v. DeKalb County, Ga*., 997 F.2d 1440, 1443 (11th Cir. 1993).  A supervisor may not be held liable under §1983 on a *respondeat superior* or vicarious liability basis for the unconstitutional acts of their subordinates.  *Christmas v. Harris Cnty.*, 51 F. 4th 1348, 1354, 1355 (11th Cir. 2022).  Instead, the supervisor must personally participate in the alleged unconstitutional conduct or the Plaintiff must show a causal connection between the actions of the supervisor and the alleged constitutional deprivation (Id.).

The Plaintiff does not allege that Defendant Snedecker personally participated in any of the alleged actions that did not actually occur against him, nor does he allege any causal connection either.  Defendant Snedecker was simply there and failed to stop fictional events from occurring in the Plaintiff's mind.  As such, there is no supervisory liability attached to Defendant Snedecker, and this claim is due to be dismissed.

## **CONCLUSION**

FOR EACH OF THE FOREGOING REASONS, DEFENDANTS HOFFMAN, MANNING, LUTZ, SNEDECKER, AND STEPP, respectfully request that this Honorable Court grant the Defendants' Motion to Dismiss and grant any such additional relief as this Honorable Court deems necessary and proper.

**OFFICE OF THE CITY ATTORNEY**
**CITY OF PALM BAY**
By: /s/ Erich Messenger
FLB: 0096055
120 Malabar Rd., S.E.
Palm Bay, Florida 32907
Telephone: (321) 409-7185
Facsimile: (321) 409-7112
Erich.Messenger@palmbayflorida.org
legal.mail@palmbayflorida.org

**PATRICIA D. SMITH** / FLB No. 728160
Board Certified Specialist
State & Federal Government & Administrative Practice
City, County & Local Government Law
Designated Email: Patricia.Smith@palmbayflorida.org

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on October 28, 2025, I served Defendants' Motion to Dismiss by presenting the foregoing to the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System for all counsel of record and will mail a copy by U.S. Mail to Antonio Jackson, #261793, Brevard County Jail, PO Box 9145, Seminole FL 33775-9145.

/s/ *Erich Messenger*
Erich Messenger